IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LIBBY WILLIAMS** <br> -and- <br> C.W. (a minor at all relevant times), by Libby Williams as Guardian <br> -and- <br> **ROCELLUS CARTER,** <br>        *Plaintiffs,* <br> v. <br> **OFFICER TYSON HAVENS** <br> -and- <br> **OFFICERS JOHN/JANE DOE #1-20** <br>        *Defendants.* | CIVIL ACTION <br><br> NO. <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiffs, Libby Williams, C.W., and Rocellus Carter, by and through their undersigned counsel, The O'Hanlon Law Firm, P.C., hereby demand a trial by jury and complain against the above-captioned Defendants in their individual capacities as follows:

### Statement of Claim and Jurisdiction

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution and under the common law of the Commonwealth of Pennsylvania against Defendant Officers in their individual capacities. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 and on the state law claims elucidated herein and pendent jurisdiction to entertain claims arising under federal law pursuant to 28 U.S.C. § 1367.

1

2. It is alleged that the individual Defendants made an unreasonable seizure of the Plaintiffs' person and property, violating their rights under the Fourth Amendment to the United States Constitution. Defendants also violated Pennsylvania tort law by committing assault and battery against the Plaintiffs, falsely arresting and imprisoning the Plaintiffs, and converting of their property.

## Parties

3. Plaintiff, Libby Williams (hereinafter "Plaintiff Williams") is a citizen of the United States and at all times relevant to the claims arising herein was a citizen of the Commonwealth of Pennsylvania with a permanent residential address at 2801 Linn Street, Williamsport, PA 17701.

4. Plaintiff, C.W. (hereinafter "Plaintiff C.W.") is a minor who resides with his mother and is ten (10) years of age. Plaintiff Williams is the parent of Plaintiff C.W. and brings this action as guardian on his behalf.

5. Plaintiff C.W. and his guardian, Libby Williams are citizens of the United States and at all times relevant to the claims arising herein were citizens of the Commonwealth of Pennsylvania with a permanent residential address at 2801 Linn Street, Williamsport, PA 17701.

6. Plaintiff, Rocellus Carter (hereinafter "Plaintiff Carter") is a citizen of the United States and at all times relevant to the claims arising herein was a citizen of the Commonwealth of Pennsylvania with a permanent residential address at 2801 Linn Street, Williamsport, PA 17701.

7. The Defendant, Officer Tyson Havens (hereinafter individually as "Defendant Officer Havens") was at all times relevant to this complaint duly appointed and acting officer of the Police Department of Williamsport, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of

Pennsylvania and/or Williamsport, with a business address of 245 West 4th Street, Williamsport, PA 17701.

8. The Defendants, Officers John/Jane Does #1-20, (hereinafter individually as "Defendant Officer Does") were at all times relevant to this complaint duly appointed and acting officers of the Police Department of Williamsport, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and/or Williamsport, with a business address of 245 West 4th Street, Williamsport, PA 17701

9. Defendants Officers Havens and John/Jane Does will be referred to in this complaint collectively as "Defendant Officers."

## Facts

10. On the morning of September 29, 2020, at approximately 5:30 A.M., Plaintiff Williams was asleep in her home at 2801 Linn Street, Williamsport, PA 17701.

11. Plaintiff Williams had begun to wake for the morning when she suddenly heard a large commotion outside her front door.

12. Plaintiff Williams was frightened by the sounds outside her home and, because she had just woken up, she could not process what was going on.

13. Then suddenly and without warning, Defendant Officers kicked open Plaintiff Williams' door and threw a flash grenade into the home.

14. Plaintiff Williams was terrified and completely immobilized from fear.

15. Defendant Officers, wearing military uniforms, stormed the house with their guns drawn and aimed at Plaintiff Williams. Defendant Officers barged through the threshold and began screaming at Plaintiff Williams and her family.

16. At this time, Plaintiff C.W. came out of his bedroom in a complete daze and unsure of what was taking place. Plaintiff Williams, fearing for Plaintiff C.W.'s safety, told him to return to his room and stay away.

17. The Defendant Officers swarmed into Plaintiff Williams' home, hurling multiple flash grenades in the process. Plaintiff Williams' home was blanketed by thick smoke.

18. Defendant Officers started yelling at Plaintiff C.W. to follow their voices and turn around. Plaintiff C.W., being only ten years old, was confused and afraid. He started walking toward their voices. However, they continued to yell at him to turn around.

19. Plaintiff Williams tried to explain to the Defendant Officers that her son was only ten years old and was extremely confused about what was happening. The Defendant Officers did not seem to care and acted with extreme disregard for the child's safety.

20. Plaintiff Carter, Plaintiff Williams' adopted son, and Tahjir Dorsey, a family friend staying over at the Plaintiffs' home for the night, were awakened by the noise and came out of their rooms to see what was happening. Defendant Officers, seeing the pair, began screaming and ordering them to walk backward toward their voices.

21. Defendant Officers also had Plaintiff Williams walk backward out of the house.

22. Once outside, the Defendant Officers handcuffed the Plaintiffs and sat them all down on the grass. It was cold and raining outside and the Plaintiffs were not properly dressed for the weather. They were all left shivering and uncomfortable.

23. Plaintiff Williams asked the Defendant Officers what they were doing at her home. They told her not to worry about it. Plaintiff Williams was extremely confused and scared.

24. Plaintiff Williams asked to see a warrant but the Defendant Officers told her that the warrant was sealed and they yelled at her that they did not need to show the warrant to her.

25. At this point, Plaintiff Carter began to ask the Defendant Officers why they were doing this. One officer thrust his loaded gun up against Plaintiff Carter's head and screamed, "Shut up right now!"

26. When Plaintiff Williams began to protest the Defendant Officers' cruel and sadistic behavior, they told her to "Shut the fuck up!" The Defendant Officers continued to scream at everyone to shut up and refused to provide any explanations.

27. One of Plaintiff Williams' neighbors, Annett, who saw what was going on, asked if she could take Plaintiff C.W. with her since he was only ten years old. The Defendant Officers rudely yelled that he had to stay.

28. The Plaintiffs were afraid, stressed, and confused about what was going on. Plaintiff Williams was primarily concerned with the effect this would have on her ten-year-old son. She was terrified this event would have long term effects on him, damaging his mental well-being and feeling of safety.

29. Plaintiff Williams and her son were then put in the back of a police car and taken to the police station. At this time, the Defendant Officers began to illegally and without permission, search the Plaintiffs' house.

30. Defendant Officer Havens then proceeded to interrogate Plaintiff Williams. Plaintiff Williams asked why she was being questioned. Defendant Officer Havens said to Plaintiff Williams, "You know why!" Plaintiff Williams responded that she did not know why. Defendant Officer Havens said, "You have been selling drugs for years! Come on. I have been watching you!" Plaintiff Williams responded that she had no idea what he was talking about.

31. Plaintiff Williams is not a drug dealer and Defendant Officer Havens gave no reason or basis for believing that she was one. Any warrant obtained was based upon false information known to be false by Defendant Officers.

32. Defendant Officer Havens then pulled up a video from Plaintiff Williams' Facebook page, which she asserted showed she hated police officers. Plaintiff Williams responded that her feelings toward police officers have no bearing on whether she was a drug dealer.

33. Plaintiff Williams again asked to see their warrant but they told her it was sealed. In addition, Plaintiff Williams asked the local police at the station for information but they said they had no information on the Defendant Officers' raid on her home.

34. During this ordeal, Defendant Officers told Plaintiff C.W. to say goodbye to his mother as she was going to prison for a very long time. This terrified him and left him very stressed.

35. While Plaintiff Williams was handcuffed to a bench at the station, the Defendant Officers showed her a picture of her gun on her living room couch and asked if it belonged to her. Plaintiff Williams said that the gun was hers. The Defendant Officers then asked if she had a permit for the gun and she said that she did.

36. The Defendant Officers then showed her a picture of a kid with a gun that was a completely different kind of gun and asked if it was the same gun. Plaintiff Williams replied that it was not.

37. Plaintiff Williams was very distraught by all of this questioning and was extremely worried about how her son was doing.

38. The Defendant Officers asked Plaintiff Williams to provide a DNA sample. Defendant Officers told her that she would be released if she provided a DNA sample. Plaintiff Williams, left without any alternative, agreed to give samples.

39. The Defendant Officers then uncuffed Plaintiff Williams and kicked her out of the station. The Defendant Officers did not allow Plaintiff Williams to make any phone calls but ordered her to leave immediately.

40. Plaintiff Williams was in the police station for approximately four to five hours, causing her to miss work. Plaintiff Williams was underdressed, cold, and shoeless throughout the entire ordeal. This caused her a significant amount of physical and emotional suffering.

41. While Plaintiff Williams was leaving the police station, she crossed paths with the Mayor. When she told the Mayor about what happened, he told her to file a complaint with the District Attorney's Office.

42. When Plaintiff Williams went to file a formal complaint against the Defendant Officers, the Defendant Officers told her she could not and barred her from doing so.

43. The Defendant Officers took items belonging to the Plaintiffs and have since refused to return them without justification. Defendant Officers took Plaintiff C.W.'s cell phone and never returned it. The Defendant Officers took and have refused to return Plaintiff Williams' legally owned firearm.

44. Upon release from the Defendant Officers custody, the Plaintiffs returned to their home and found that the interior was completely ransacked and its contents ruined. There were foodstuffs and items strewn about the house, and all of the furniture was torn apart. The house was in a state of total disarray.

45. Plaintiffs' house had all of their belongings thrown about and completely covering the floors, the thermostat was ripped out of the wall, the Defendant Officers filled the showers with the contents of the cabinets, food was left open by the Defendant Officers, the oven and fridge were out-of-place, the family pictures and wall decorations were torn off the walls, the circuit breaker was pried open, and the beds were left in pieces.

46. Upon closer inspection, Plaintiff Williams discovered the Defendant Officers had broken her televisions and oven and the flash grenades thrown by the Defendant Officers created holes in the walls.

47. Defendant Officers caused extensive damage to Plaintiff Williams' home to the degree that Plaintiff Williams cannot afford to make the necessary repairs. Plaintiff Williams has experienced extreme mental anguish over the event.

48. Plaintiff C.W. now lives in complete fear of the police and does not feel safe due to these events. These events left him indelibly scarred and extremely anxious.

49. The Defendant Officers actions perpetrated against the Plaintiffs of illegal and unlawful arrest, wrongful imprisonment, seizure of their personal belongings, and extensive damage caused to their home and possessions, particularly because the Defendant Officers had full knowledge of the lack of any legitimate cause or justification, was intentional, malicious, reckless and in bad faith. As a direct and proximate result of the Defendant Officers' actions, the Plaintiffs suffer and continue to suffer mental anguish.

50. At all times during the events described above, Defendant Police Officers were engaged in a joint venture. The individual Defendant Police Officers assisted each other in performing the various actions described herein and lent their physical presence and support and the authority of their office to each other during the said events.

51. As a direct and proximate result of the Defendant Officers' actions, the Plaintiffs were arrested and imprisoned without probable cause. As a direct and proximate result of the Defendant Officers' actions, the Plaintiffs had their personal belongings seized and home destroyed without probable cause.

52. The Defendant Officers' actions, acting under color of state law, deprived the Plaintiffs of their rights under the Constitution of the United States; in particular, the right to be secure in their person and property, to be free from seizure, false arrest, and imprisonment.

53. By these actions, the Defendant Officers have deprived the Plaintiffs of their rights secured by the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. Section 1983. As a direct and proximate result of the said acts of Defendant Officers, Plaintiffs suffered the following injuries and damages:

    a. Violation of their Constitutional rights under the Fourth to the United States Constitution;

    b. Loss of physical liberty;

    c. Emotional injury;

    d. Confiscation and destruction of property.

54. The actions of Defendant Officers violated the following clearly established and well-settled federal constitutional rights of Plaintiff:

    a. Freedom from the unreasonable searches and seizure of their person;

    b. Freedom from the destruction of property;

    c. Freedom from excessive use of force.

55. The Defendant Officers' actions were malicious, illegal, unlawful, and directed at depriving the Plaintiffs of their constitutional rights.

## Causes of Action

### COUNT ONE: 42 U.S.C. § 1983 - FOURTH AMENDMENT UNREASONABLE SEARCH AND SEIZURE CLAIMS AGAINST ALL DEFENDANTS

56. Paragraphs 1 through 55 are incorporated herein by reference as though fully set forth.

57. The Plaintiffs claim damages for the injuries set forth above under 42 U.S.C. § 1983 against all Defendants for infringing upon their Fourth Amendment rights to be free from unreasonable and illegal search and seizure of their person and property.

58. At all times during the events described above, the Defendants lacked probable cause to enter into and search the Plaintiffs' home.

59. At all times during the events described above, the Defendants lacked probable cause to detain and arrest the Plaintiffs.

60. The Defendant Officers, acting in concert, raided and ransacked Plaintiffs' home at approximately 5:30 A.M. on September 29, 2020.

61. The Defendant Officers kicked open the door and threw multiple flash grenades inside the Plaintiffs' home. The Defendant Officers entered the house, shouting orders and pointing their firearms at the Plaintiffs. The Defendant Police Officers threatened the Plaintiffs with serious bodily injury.

62. The Plaintiffs were illegally seized by Defendant Officers, acting in concert. The Plaintiffs were arrested for no reason and forced to stand outside the Defendant Officers in the cold while underdressed and barefoot.

63. Without cause or justification, the Defendant Officers took the Plaintiffs against their will to the police station and held them there for several hours.

64. The Defendant Officers acted in concert and assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events. Therefore, the Defendant Officers are liable for the Plaintiffs' injuries.

65. All of the Defendants' aforementioned acts were carried out under the color of state law and by Defendants in their capacities as police officers, with all actual and/or apparent authority afforded thereto.

66. All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983, including the right to be free from unreasonable search and seizure.

67. The Defendant Officers, in a militarized raid, unlawfully arrested and detained a woman and her children. The Defendant Officers pulled the Plaintiffs' out of their home and forced them underdressed and barefoot out into the cold weather and police station without any justification. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiffs' rights and safety, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the Defendant and others like the Defendant from further wrongdoing.

68. Each Defendant Police Officer had personal involvement in the infringement of Plaintiffs' Fourth Amendment rights, and each officer was acting under color of state law. To the extent that a search warrant may have been obtained, it was based upon false submissions in an Affidavit of Probable Cause, containing falsehoods known to be false by involved Defendant Officers.

69. Accordingly, Plaintiffs should be compensated for the violation of their Fourth Amendment rights to be free from unlawful and unreasonable seizure, arrest, and imprisonment.

## COUNT TWO: 42 U.S.C. § 1983 – FOURTH AMENDMENT SEARCH AND SEIZURE CLAIMS AGAINST ALL DEFENDANTS

70. The Plaintiffs incorporate paragraphs 1 through 69 above as though fully set forth.

71. The Defendant Officers, acting in concert, executed a militarized raid upon Plaintiffs' home.

72. The Defendant Officers broke open Plaintiffs' front door and hurled flashbang grenades into the home. These hurled flashbang grenades created large holes in the interior walls of the Plaintiffs' home.

73. The Defendant Officers ransacked the Plaintiffs' home. There were foodstuffs and items strewn about the house, and all of the furniture was torn apart. The house was in a state of total disarray.

74. Plaintiffs' house had all of their belongings thrown about and completely covering the floors, the thermostat was ripped out of the wall, the Defendant Officers filled the showers with the contents of the cabinets, food was left open by the Defendant Officers, the oven and fridge were out-of-place, the family pictures and wall decorations were torn off the walls, the circuit breaker was pried open, and the beds were left in pieces.

75. Upon closer inspection, Plaintiff Williams discovered the Defendant Officers had broken her televisions and oven. Defendant Officers caused extensive damage to Plaintiff Williams' home to the degree that Plaintiff Williams cannot afford to make the necessary repairs.

76. The Defendant Officers substantially damaged the Plaintiffs' home without cause, rendering it uninhabitable.

77. The Defendant Officers took items belonging to the Plaintiffs have since refused to return them without justification. Defendant Officers took Plaintiff C.W.'s cell phone and never returned it. The Defendant Officers took and have refused to return Plaintiff Williams' legally owned firearm.

78. Each Defendant Officer had and has a personal involvement in the infringement of the Plaintiffs' Fourth Amendment rights. Each officer was acting under color of state law and by the Defendants in their capacities as police officers, with all actual and/or apparent authority afforded thereto.

79. All of the aforementioned acts deprived Plaintiffs' of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983, including the right to be free from unreasonable searches and seizures.

80. The Defendant Officers intentionally engaged in an unreasonable search whereby they destroyed the Plaintiffs' property, hurled several flashbang grenades into their home, and took their property in violation of Plaintiffs' constitutional rights. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiffs' rights and safety, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the Defendants and others like the Defendants from further wrongdoing. To the extent that a search warrant may have been obtained, it was based upon false submissions in an Affidavit of Probable Cause, containing falsehoods known to be false by involved Defendant Officers.

81. The Plaintiffs should, therefore, be compensated for the violations of their Fourth Amendment rights.

## COUNT THREE: 42 U.S.C. § 1983 – FOURTH AMENDMENT CLAIM EXCESSIVE USE OF FORCE AGAINST ALL DEFENDANTS

82. Paragraphs 1 through 81 are incorporated herein by reference as though fully set forth.

83. Defendant Police Officers, acting in concert and under color of state law, attacked the Plaintiffs for no reason causing injuries to Plaintiffs' arms, wrists, and hands. Defendant Officers also threatened to shoot Plaintiffs with a taser and/or firearm and threatened to cause serious bodily injury when Plaintiffs were already handcuffed.

84. The Defendant Police Officers threw several flashbang grenades into the Plaintiffs' home and aimed their weapons at Plaintiffs. Plaintiff C.W., a mere ten-year-old boy, was forced to witness as Defendant Officers thrust loaded firearms up against Plaintiff Carter's head and screamed, "Shut up right now!"

85. During this ordeal, Defendant Officers told Plaintiff C.W. to say goodbye to his mother as she was going to prison for a very long time.

86. There is no justification for the force used by Defendant Police Officers against Plaintiffs.

87. Each Defendant Officer had and has a personal involvement in the infringement of the Plaintiffs' Fourth Amendment rights. Each officer was acting under color of state law and by the Defendants in their capacities as police officers, with all actual and/or apparent authority afforded thereto.

88. The Defendant Officers intentionally engaged in the use of excessive force against the Plaintiffs whereby they hurled several flashbang grenades into their home and threatened a ten-year-old boy with death. This conduct is outrageous, willful, wanton, malicious,

14

and done with reckless disregard for Plaintiffs' rights and safety, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the Defendant and others like the Defendant from further wrongdoing.

89. Therefore, Plaintiffs should be compensated for the violation of their Fourth Amendment rights not to be subjected to excessive use of government/police force.

## COUNT FOUR: PENNSYLVANIA TORT LAW – ASSAULT AND BATTERY AGAINST ALL DEFENDANTS

90. The Plaintiffs incorporate paragraphs 1 through 89 above as though fully set forth.

91. The Defendants' acts and conduct as aforesaid constitute assault and battery under the laws and Constitution of the Commonwealth of Pennsylvania.

92. The Defendant Police Officers, acting in concert and under color of state law, attacked the Plaintiffs for no reason causing injuries to Plaintiffs' arms, wrists, and hands. Defendant Officers also threatened to shoot Plaintiffs with a taser and/or firearm and threatened to cause serious bodily injury when Plaintiffs were already handcuffed.

93. The Defendant Officers intended to cause or recklessly caused Plaintiffs to experience an imminent apprehension of a harmful or offensive bodily contact. When Plaintiffs asked why they were being detained, Defendant Officers held loaded guns to the Plaintiffs' heads in a violent and threatening manner.

94. In addition, the Defendant Officers applied handcuffs in an extremely tight manner causing Plaintiffs excruciating pain to their wrists. Plaintiffs requested that the handcuffs be loosened but the Defendant Police Officers refused that request as well.

95. The assault and battery committed by the Defendants upon the persons of the Plaintiffs were unprovoked and in no manner whatsoever due to any act or failure to act on the part of Plaintiffs. The Defendants' conduct was outrageous, wanton, willful, malicious, shocking

to the conscience, and totally without justification. The Defendants' actions had no basis in law and were beyond the bounds of reasonable police work and the Defendants are, therefore, entitled to no immunity.

96. As a direct and proximate result of the Defendant Officers' treatment of the Plaintiffs, the Plaintiffs suffer and continue to suffer physical pain and suffering.

97. The Defendant Officers intentionally engaged in the assault and battery of the Plaintiffs. They hurled several flashbang grenades into their home, threatened them with serious bodily injury and death, and physically injured them. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiffs' rights and safety, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the Defendant and others like the Defendant from further wrongdoing.

98. Therefore, the Plaintiffs should be compensated for the violation of the Pennsylvania tort of Assault and Battery.

### COUNT FIVE: PENNSYLVANIA TORT LAW - FALSE ARREST AND IMPRISONMENT AGAINST ALL DEFENDANTS

99. Paragraphs 1 through 98 are incorporated herein by reference as though fully set forth.

100. The Defendant Officers' acts and conduct as aforesaid caused the Plaintiffs to be deprived of their rights to be free from unlawful detention and secure in their person and property guaranteed under the laws and Constitution of the Commonwealth of Pennsylvania.

101. The Plaintiffs were illegally seized by Defendant Officers, acting in concert. The Plaintiffs were arrested for no reason and forced to stand outside the Defendant Officers in the cold while underdressed and barefoot.

102. Without cause or justification, the Defendant Officers took the Plaintiffs against their will to the police station and held them there for several hours.

103. The Defendant Officers knew there was no probable cause to arrest or legal basis to detain the Plaintiffs. The arrest and imprisonment of the Plaintiffs resulted from racial animus and profiling perpetuated by the Defendant Officers. The Defendant Officers intended and caused Plaintiffs' restraint and confinement for four hours. The Defendants' actions had no basis in law and were beyond the bounds of reasonable police work and the Defendants are, therefore, entitled to no immunity.

104. As a direct and proximate result of the Defendant Officers' treatment of the Plaintiffs, the Plaintiffs suffer and continues to suffer physical pain and suffering.

105. The Defendant Officers intentionally engaged in false arrest and imprisonment of the Plaintiffs whereby they were falsely arrested and imprisoned without probable cause or justification. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiffs' rights and safety, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the Defendant and others like the Defendant from further wrongdoing.

106. Therefore, the Plaintiffs should be compensated for the violation of the Pennsylvania tort of false arrest and imprisonment.

### COUNT SIX: PENNSYLVANIA TORT LAW – CONVERSION AGAINST ALL DEFENDANTS

107. Paragraphs 1 through 106 are incorporated herein by reference as though fully set forth.

108. The Defendant Officers' acts and conduct as aforesaid constitute conversion under the laws and Constitution of the Commonwealth of Pennsylvania.

109. The Defendant Officers, acting in concert, executed a militarized raid upon Plaintiffs' home.

110. The Defendant Officers broke open Plaintiffs' front door and hurled flashbang grenades into the home. These hurled flashbang grenades created large holes in the interior walls of the Plaintiffs' home.

111. The Defendant Officers ransacked the Plaintiffs' home. There were foodstuffs and items strewn about the house, and all of the furniture was torn apart. The house was in a state of total disarray.

112. Plaintiffs' house had all of their belongings thrown about and completely covering the floors, the thermostat was ripped out of the wall, the Defendant Officers filled the showers with the contents of the cabinets, food was left open by the Defendant Officers, the oven and fridge were out-of-place, the family pictures and wall decorations were torn off the walls, the circuit breaker was pried open, and the beds were left in pieces.

113. Upon closer inspection, Plaintiff Williams discovered the Defendant Officers had broken her televisions and oven. Defendant Officers caused extensive damage to Plaintiff Williams' home to the degree that Plaintiff Williams cannot afford to make the necessary repairs.

114. The Defendant Officers substantially damaged the Plaintiffs' home without cause, rendering it uninhabitable.

115. The Defendant Officers took items belonging to the Plaintiffs have since refused to return them without justification. Defendant Officers took Plaintiff C.W.'s cell phone and never returned it. The Defendant Officers took and have refused to return Plaintiff Williams' legally owned firearm. The Defendants' actions had no basis in law and were beyond the bounds of reasonable police work and the Defendants are, therefore, entitled to no immunity.

116. The Defendant Officers intentionally took items belonging to the Plaintiffs and have since refused to return them without justification. The Defendants completely destroyed the Plaintiffs' home and property. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiffs' rights and safety, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the Defendant and others like the Defendant from further wrongdoing.

117. The Plaintiffs should, therefore, be compensated for the violation of the Pennsylvania tort of conversion.

## Prayer for Relief

WHEREFORE, the Plaintiffs requests that this Court:

a. Award compensatory damages to the Plaintiffs against the Defendants;

b. Award costs of this action to the Plaintiffs;

c. Award reasonable attorney's fees and costs to the Plaintiffs pursuant to 42 U.S.C. §§ 1983 and 1988 and any other applicable law;

d. Award punitive damages to the Plaintiffs against the Defendants to punish them for the wanton and willful actions described above and to deter further wrongdoing;

e. Award such other and further relief as this Court may deem appropriate.

## Demand for Jury Trial

The Plaintiffs hereby demands a jury trial.

*{Signature on the following page}*

**THE O'HANLON LAW FIRM, P.C.**

_____
STEPHEN T. O'HANLON, ESQUIRE

DATE: January 5, 2021

**THE O'HANLON LAW FIRM, P.C.**
BY:   Stephen T. O'Hanlon, Esquire (PA Bar # 208428)
Attorney for Plaintiffs
2 Penn Center, Suite 1410,
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel:  (267) 546-9066
Fax: (215) 567-1998
steve@ohanlonlawfirm.com