IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBBY WILLIAMS, *et al.*, | No. 4:21-CV-00015 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| TYSON HAVENS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

NOVEMBER 1, 2021

## I.   BACKGROUND

On January 5, 2021, Plaintiffs Libby Williams, her minor child C.W., and her adopted son Rocellus Carter filed a six-count complaint. Claiming violations of federal and state law, Plaintiffs sued twenty-one officers in the Williamsport Police Department. These Defendants include Tyson Havens and twenty unnamed John/Jane Doe Defendants.

On March 26, 2021, Defendant Tyson Havens filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is now ripe for disposition; for the reasons that follow, it is granted. However, Plaintiffs will be provided leave to amend their complaint.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a claim"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

---

[1]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).
[2]  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).
[3]  *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).
[4]  *Id.* at 327.
[5]  Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).
[6]  550 U.S. 544 (2007).
[7]  556 U.S. 662 (2009).
[8]  *Id.* at 670.
[9]  *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]  No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16]  However, "the tenet that a court must accept

---

[10]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]   *Id.*
[12]   *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).
[13]   *Twombly*, 550 U.S. at 556.
[14]   *Iqbal*, 556 U.S. at 679.
[15]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).
[16]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[17]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

### B. Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

Around 5:30 a.m. on September 29, 2020, Plaintiff Libby Williams began to wake up for the morning.[20]  Then, Defendants kicked open Williams's door and threw a flash grenade into her home.[21]  Defendants barged through the home with their guns drawn, hurling flash grenades and screaming at Williams and her family.[22]

---

[17] *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[18] *Id.*  *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").
[19] *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).
[20] Doc. 1 at ¶¶ 10–11.
[21] *Id.* at ¶ 13.
[22] *Id.* at ¶ 15.

When Plaintiff C.W. came out of his bedroom, Defendants yelled at him to turn around.[23] And when Plaintiff Rocellus Carter and Williams's family friend Tahjir Dorsey came out of their rooms to see what was happening, Defendants screamed at them too, ordering them to walk backward.[24] Defendants also ordered Williams to walk backward and out of the house.[25]

Once Plaintiffs were outside, Defendants handcuffed them and placed them on the grass.[26] When Williams asked to see a warrant, Defendants yelled that they did not need to show the warrant because it was sealed.[27] And when Carter asked why Defendants were doing this, an officer thrust his loaded gun against Carter's head and screamed, "Shut up right now!"[28] Defendants also told Williams to "Shut the fuck up!"[29]

Defendants then put Williams and her son in the back of a police car and took them to the police station.[30] At this time, Defendants began searching Williams's home without her permission.[31] Then, Defendant Officer Tyson Havens interrogated Williams, accused her of selling drugs, and retrieved a Facebook video asserting Williams's hate for police officers.[32]

---

[23] *Id.* at ¶¶ 16–18.
[24] *Id.* at ¶ 20.
[25] *Id.* at ¶ 21.
[26] *Id.* at ¶ 22.
[27] *Id.* at ¶ 24.
[28] *Id.* at ¶ 25.
[29] *Id.* at ¶ 26.
[30] *Id.* at ¶ 29.
[31] *Id.*
[32] *Id.* at ¶¶ 30–32.

When Williams asked to see the warrant again, Defendants replied that it was sealed.[33] Defendants also told C.W. to say goodbye to his mother because she was going to prison for a very long time.[34] This statement terrified C.W. and stressed him out.[35]

At the police station, Defendants handcuffed Williams to a bench.[36] When Defendants showed Williams a picture of a gun on her living room couch, Williams confirmed that she had a permit for her gun.[37] But when Defendants showed Williams a picture of another gun and asked if it was the same gun, Williams replied that it was not.[38]

Defendants also asked Williams to provide a DNA sample, telling her that they would release her if she complied.[39] So Williams gave a DNA sample.[40] Then, Defendants uncuffed Williams and ordered her to leave the police station.[41]

Stuck at the police station for four to five hours, Williams missed work that day.[42] And throughout this incident, Williams was cold, undressed, and shoeless.[43]

---

[33] *Id.* at ¶ 33.
[34] *Id.* at ¶ 34.
[35] *Id.*
[36] *Id.* at ¶ 35.
[37] *Id.*
[38] *Id.* at ¶ 36.
[39] *Id.* at ¶ 38.
[40] *Id.*
[41] *Id.* at ¶ 39.
[42] *Id.* at ¶ 40.
[43] *Id.*

Moreover, Defendants took C.W.'s cell phone and Williams's firearm and have since refused to return them without justification.[44]

After her release, Williams returned home.[45] She found that Defendants had torn her furniture apart and thrown food and other items throughout the home.[46] Defendants had also ripped her thermostat off the wall, broken her television, pried open her circuit breaker, and torn off family pictures and wall decorations.[47] Moreover, the flash grenades had created holes in the walls.[48] Defendants damaged Williams's home so extensively that she cannot afford to repair it.[49]

### C.  Analysis

#### 1.  42 U.S.C. § 1983

First, Plaintiffs allege that "Defendant Police Officers" violated the Fourth Amendment by using excessive force and conducting unreasonable searches and seizures.[50] But "[a]llegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient."[51]  After all, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.[52]  Accordingly, Plaintiffs' allegations about the "Defendant Police

---

[44] *Id.* at ¶ 43.
[45] *Id.* at ¶ 44.
[46] *Id.*
[47] *Id.* at ¶ 45.
[48] *Id.* at ¶ 46.
[49] *Id.* at ¶ 47.
[50] *Id.* at ¶¶ 56–89.
[51] *Lee v. Clark*, No. 1:19-CV-00353, 2020 WL 8768344, at *4 (W.D. Pa. Dec. 14, 2020), *report and recommendation adopted*, No. CV 19-353, 2021 WL 630961 (W.D. Pa. Feb. 18, 2021).
[52] *Iqbal*, 556 U.S. at 677.

Officers" or "Defendant Officers" as a group do not suffice against Havens individually.

Plaintiffs also allege that during the raid, Havens interrogated Williams, accused her of selling drugs, and retrieved a video from her Facebook page.[53] Unlike the allegations about the officers as a group, these allegations concern Havens himself. But by itself, this interaction does not indicate that Havens used excessive force or conducted unreasonable searches or seizures.

Plaintiffs further allege that "Each Defendant Officer had and has a personal involvement in the infringement of the Plaintiffs' Fourth Amendment rights."[54] But "alleging a mere hypothesis that an individual defendant had personal . . . involvement in depriving the plaintiff of his rights is insufficient."[55] Thus, these "conclusory allegations of unlawful conduct do not satisfy the plausibility standard with respect to . . . the [§ 1983] claims asserted against" Havens.[56]

In response, Plaintiffs analogize their case to *Smith v. Mensinger*.[57] In this excessive force case, Smith acknowledged that he could not see prison guards while they were beating him.[58] Smith also testified that all the named guards pushed his

---

[53] Doc. 1 at ¶¶ 30–32.
[54] *Id.* at ¶¶ 68, 78, 87.
[55] *Kirk v. Roan*, No. 1:04 CV 1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006).
[56] *Galicki v. New Jersey*, No. CIV.A. 14-169 JLL, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015).
[57] 293 F.3d 641 (3d Cir. 2002).
[58] *Id.* at 650.

head into walls.[59] Given Smith's testimony, the Third Circuit found a factual dispute about the extent of each officer's involvement and reversed the summary judgment in the officers' favor.[60]

Unlike *Smith*, Plaintiffs here do not allege that they could not see Havens's conduct.[61] Nor do Plaintiffs allege that *all* the Defendants, including Havens, kicked open their door, threw flash grenades, arrested them, seized their property, or damaged their house.[62] In the absence of such allegations about Havens's conduct, *Smith* does not save Plaintiffs' claims here.

Plaintiffs further counter that they have adequately pled a conspiracy under 42 U.S.C. § 1983.[63] But in their complaint, Plaintiffs bring only excessive force and unreasonable search and seizure claims under § 1983.[64] Indeed, their complaint never mentions the word "conspiracy."[65]

Nor does it allege facts permitting an inference of conspiracy. At various points, the complaint alleges generally that Defendants were engaged in a joint venture, assisted each other, and acted in concert.[66] These allegations are not specific

---

[59] *Id.*
[60] *Id.*
[61] Doc. 1 at ¶¶ 10–89.
[62] *Id.*
[63] Doc. 10 at 4, 5.
[64] Doc. 1 at ¶¶ 56–89.
[65] Doc. 1.
[66] *Id.* at ¶¶ 50, 64.

enough to adequately plead conspiracy.[67] Accordingly, Plaintiffs' § 1983 claims against Havens are dismissed for failure to state a claim.

### 2. Pennsylvania Torts

Next, Plaintiffs claim assault, battery, false arrest and imprisonment, and conversion under Pennsylvania law. The Court addresses each tort in turn. In sum, these state-law tort claims against Havens are dismissed.

#### a. Assault and Battery

"An assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact."[68] And "[t]he tort of battery has been described as an unconsented touching that is either harmful or offensive."[69] Here, Plaintiffs allege that Defendants assaulted and battered them by hurling flashbang grenades into their home, physically attacking them, threatening to shoot them, and threatening them with serious bodily injury.[70]

Under "[t]he general rule, . . . the burden of proof is upon the plaintiff to show that the tortious conduct of the defendant has caused the particular harm to the

---

[67] *See Van Tassel v. Piccione*, 608 F. App'x 66, 70 (3d Cir. 2015) (holding that the "District Court properly dismissed all of Appellant's federal claims" because "her non-specific allegations that those defendants conspired generally, 'corrupted the judicial process' or 'violated her rights' are legal conclusions insufficient to state a claim and to which this Court does not owe deference on a motion to dismiss"); *see also Galicki v. New Jersey*, No. CIV.A. 14-169 JLL, 2015 WL 3970297, at *4 (D.N.J. June 29, 2015) ("Plaintiffs' § 1983 allegations are merely conclusory and have not been supported sufficiently by factual allegations. The same is true of any allegation of a conspiracy between [defendants]. The sum total of Plaintiffs' allegation is that 'defendants . . . conspired.'").

[68] *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994).

[69] *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. Super. Ct. 2012).

[70] Doc. 1 at ¶¶ 90–98.

plaintiff."[71]   But Plaintiffs do not allege any facts about Havens assaulting or battering them.  Thus, Plaintiffs' assault and battery claims against Havens fail under the general rule in Pennsylvania law.

Nevertheless, Plaintiffs argue that their allegations suffice at the motion to dismiss stage.  To support this argument, Plaintiffs cite *Pennfield Corp. v. Meadow Valley Electric, Inc.*[72]  In *Pennfield*, the Superior Court of Pennsylvania adopted an exception to the general rule of liability when "the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it."[73]  Under this exception, "the burden is upon each actor to prove that he has not caused the harm."[74]

But the Superior Court clarified that this exception "is based on the rationale that 'injustice [lies in] permitting proved wrongdoers . . . to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.'"[75]  And *Pennfield* did not involve "an unfortunate victim of conduct caused by one of several careless parties who know the perpetrator . . . or a consumer buying an unidentifiable medicine

---

[71]   *Pennfield Corp. v. Meadow Valley Elec., Inc.*, 604 A.2d 1082, 1085 (Pa. Super. Ct. 1992).
[72]   *Id.*
[73]   *Id.* (citation and internal quotation marks omitted).
[74]   *Id.*
[75]   *Id.*

(DES) from a corporation." Thus, the Superior Court ultimately held that the exception to the general rule did "not apply" in *Pennfield*.[76]

Likewise, the exception to the general rule does not apply here. Plaintiffs' complaint does not allege that it was "difficult or impossible to prove which of" the officers assaulted or battered them.[77] Nor do Plaintiffs point to any facts permitting this inference. Thus, Plaintiffs' assault and battery claims against Havens are dismissed under the general rule.

### b. False Arrest and Imprisonment

"False imprisonment . . . entails liability to an actor if '(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it.'"[78] Here, Plaintiffs allege that Defendants committed false imprisonment by arresting them for no reason, forcing them to stand outside in the cold, taking them to the police station against their will, and detaining them without probable cause.[79]

But Plaintiffs do not specify whether and how Havens was involved in this conduct. Nor do Plaintiffs allege facts indicating that the "nature of [Defendants'] conduct and the resulting harm has made it difficult or impossible to prove which of

---

[76] *Id.* at 1088.
[77] *Id.* at 1085.
[78] *Gagliardi v. Lynn*, 285 A.2d 109, 111 n. 2 (Pa. 1971) (citation omitted).
[79] Doc. 1 at ¶¶ 99–106.

them has caused the harm."[80]  Accordingly, Plaintiffs' false arrest and imprisonment claim against Havens is dismissed.

### c. Conversion

"Pursuant to Pennsylvania case law, a conversion is widely understood as 'the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification.'"[81]  Here, Plaintiffs allege that Defendants committed conversion by breaking open their door, ransacking their home, breaking their television and oven, and taking and refusing to return several items, including a cell phone and a legal firearm.[82]

Again, Plaintiffs do not specify Havens's role in this conduct.  Nor do Plaintiffs allege facts indicating that the "nature of [this] conduct made it difficult or impossible for the injured party to determine who was liable."[83]  Accordingly, Plaintiffs' conversion claim against Havens is dismissed.

### 3. Pennsylvania Constitution

Finally, Plaintiffs claim that Defendants violated the Pennsylvania Constitution.[84]  But "[n]o Pennsylvania statute establishes, and no Pennsylvania

---

[80] *Pennfield*, 604 A.2d at 1085.
[81] *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. Ct. 2013) (quoting *McKeeman v. CoreStates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. Ct. 2000)).
[82] Doc. 1 at ¶¶ 107–17.
[83] *Pennfield*, 604 A.2d at 1086.
[84] Doc. 1 at ¶¶ 91, 100, 108.

court has recognized, a private cause of action for damages under the Pennsylvania Constitution."[85]  Thus, Plaintiffs' damages claims arising under the Pennsylvania Constitution are dismissed.

## III. CONCLUSION

Havens's motion to dismiss pursuant to Rule 12(b)(6) is granted.  The law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[86]  Here, Plaintiffs request leave to amend.[87]

As such, Plaintiff will be given thirty days from today's date to file an amended complaint.  In this amended complaint, Plaintiffs should allege facts specific to each officer's conduct.  If no amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[85] *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011).
[86] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)).
[87] Doc. 10 at 2.