IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBBY WILLIAMS, C.W., a minor by LIBBY WILLIAMS, and ROCELLUS CARTER,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICER TYSON HAVENS, OFFICERS JOHN/JANE DOE #1-20, and OFFICER WILLIAM WEBER,<br><br>Defendants. | No. 4:21-CV-00015<br><br>(Chief Judge Brann) |

MEMORANDUM OPINION

DECEMBER 4, 2023

## I. BACKGROUND

After the police searched her home, Libby Williams and Rocellus Carter commenced this suit.[1] Shortly before the deposition of a Defendant Officer on February 2, 2023, the Plaintiffs' then-attorney, Stephen O'Hanlon, purportedly entered into a settlement agreement on their behalf.[2] Williams and Carter have subsequently refused to execute the release forms needed to finalize the settlement.[3]

Pending before the Court are Defendants' Motion to Enforce Settlement and Plaintiff Libby Williams' Motions to Compel Discovery, Extend Case Management,

---

1  *See* Doc. 14 (Amended Compl.).
2  *See* Doc. 61 (Evidentiary Hearing Transcript) ¶¶ 5:3-6:15.
3  *Id.* ¶¶ 17:24-19:21.

Amend the Complaint, and Request a Trial Date. The Court will first evaluate the Motion to Enforce Settlement before addressing the motions filed by Williams.

## II.   DISCUSSION

### A.   Standard for a Motion to Enforce Settlement

When evaluating a motion to enforce settlement, courts use "the same standard as a motion for summary judgment: the non-movant's assertions must be treated as true; the non-movant must be given the benefit of the doubt when their assertions conflict with the movant's assertions; and the movant must be entitled to enforcement as a matter of law."[4] But the "'non-movant must provide evidentiary support for any assertions on which it wishes to rely in opposing a motion to enforce settlement.'"[5]

### B.   Express Authorization

Under Pennsylvania law,[6] an attorney must have actual authority to settle a case on behalf of a client.[7] Actual authority "must be the result of explicit instructions [from the client] regarding settlement."[8] However, attorneys "are not

---

[4] *Hanko v. Aspen Dental Assocs. of NEPA, PLLC*, Civ. A. No. 3:18-1322, 2020 U.S. Dist. LEXIS 204708, at *2-3 (M.D. Pa. Nov. 3, 2020) (quoting *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 535 (E.D. Pa. 2015)).
[5] *Id.*
[6] Pennsylvania substantive law applies to this analysis because "the settlement of a lawsuit and the relationship between an attorney and his client are areas traditionally governed by state law." *Mowrer v. Warner-Lambert Co.*, Civ. A. No. 98-2908, 2000 U.S. Dist. LEXIS 987, at *17 (E.D. Pa. July 13, 2000) (citing *Tiernan v. Devoe*, 923 F.2d 1024, 1032-33 (3d Cir. 1991)).
[7] *See id.* at *18.
[8] *Id.*

expected to be telepathists or even infallible interpreters of [a] client's verbalized communications."[9] "An attorney is, rather, expressly authorized to settle a client's case 'if he is reasonable in drawing an inference that the client intended him'" to act even if "'that was not the client's intent.'"[10]

While "there is a presumption that a settlement entered into by an attorney has been authorized by the client, rebuttal of the presumption renders any purported settlement ineffective."[11] If the "presumption is challenged, the 'court must find that the attorney had express authority to settle.'"[12] When "the determination of whether an attorney was authorized to enter into a settlement agreement on his client's behalf 'hinges upon a factual issue and credibility determinations are involved, a hearing should be held to determine entitlement to relief.'"[13]

As required, an evidentiary hearing was held on November 28, 2023 to address Defendants' Motion to Enforce Settlement. At this hearing, O'Hanlon and Williams presented their diverging recollections of the events surrounding the

---

[9] *Garba v. Fresh Express, Inc.*, 1:13-CV-2497, 2014 U.S. Dist. LEXIS 140557, at *11-12 (M.D. Pa. Sept. 3, 2014).
[10] *Id.* (quoting *Pisarz v. PPL Corp.*, 4:10-CV-01432, 2014 U.S. Dist. LEXIS 7009, at *4 (M.D. Pa. Jan. 21, 2014)).
[11] *Garabedian v. Allstates Eng'g Co.*, 811 F.2d 802, 803 (3d Cir. 1987) (citing *Fed. Deposit Ins. Corp. v. Alker*, 234 F.2d 113, 117 (3d Cir. 1956)).
[12] *Vangjeli v. Banks*, Civ. A. No. 19-1635, 2023 U.S. Dist. LEXIS 61158, at *10 (E.D. Pa. Apr. 6, 2023) (quoting *Buchanan v. W. Whiteland Twp.*, 08-CV-462, 2009 U.S. Dist. LEXIS 30259, at *2 (E.D. Pa. Mar. 31, 2009)).
[13] *Suber v. Peterson*, Civ. A. No. 04-1896, 2006 U.S. Dist. LEXIS 36685, at *7 (E.D. Pa. June 2, 2006) (quoting *Garabedian*, 811 F.2d at 803).

3

settlement agreement. After considering these opposing narratives, the Court concludes that O'Hanlon acted with authority when he settled this case.

### 1. Attorney O'Hanlon's Testimony

O'Hanlon testified that after reviewing the merits of the case with Williams and Carter, both agreed to the settlement terms sent in his February 2, 2023 8:48 A.M. email.[14] O'Hanlon acknowledged that Williams had expressed "some reticence" about the terms but asserted that he had "no doubt whatsoever" that she had "agreed to settle the case."[15] Further, O'Hanlon indicated that Carter has not opposed the agreement beyond failing to return the signed release form.[16]

### 2. Plaintiff Williams' Argument

Williams argued that she never agreed to settle and that instead O'Hanlon presented settlement as the only option he would pursue during their conversation on the morning of February 2, 2023.[17] She first expressed her disagreement with O'Hanlon's actions later that day by email.[18] At the hearing, she explained that she wants to expose the damage the police did to her home and seeks clarity regarding the search warrant the police relied upon.[19] When questioned by the Court, Williams

---

[14] *See* Doc. 61 (Evidentiary Hearing Transcript) ¶ 8:10-15.
[15] *Id.* ¶¶ 9:12-22.
[16] *Id.* ¶¶ 6:1-7:3.
[17] *Id.* ¶¶ 9:3-7, 10:3-12, 11:4-24.
[18] *Id.* ¶¶ 14:21-15:4.
[19] *Id.* ¶¶ 11:4-12:20.

confirmed that she never communicated with Defendants' counsel before she began to represent herself following a prior hearing held by the Court on May 23, 2023.[20]

### 3. Attorney White's Response

Finally, Defendants' counsel, Austin White, confirmed that the Plaintiffs never told him that O'Hanlon had not been authorized to settle their case.[21] White also estimated that he first learned that Williams and Carter did not intend to abide by the settlement agreement "a few weeks after" the release forms were sent on March 23, 2023.[22]

### 4. Credibility Determination

Although faced with alternative explanations, the Court finds O'Hanlon's testimony to be more credible for several reasons. First, O'Hanlon indicated that this is the only time he has been faced with such an issue in his fifteen years of practice as an attorney.[23] This unblemished aspect of O'Hanlon's professional record lends legitimacy to his assertion that he acted with authority to settle the case. Second, O'Hanlon provided an overview of the weakness of Plaintiffs' case and the reasons he encouraged them to settle.[24] The reasonableness of his professional judgment in this matter supports his explanation for why he encouraged Plaintiffs to settle and

---

[20] *Id.* ¶¶ 13:11-14:20.
[21] *Id.* ¶¶ 17:24-18:3.
[22] *Id.* ¶¶ 18:3-19:21.
[23] *Id.* ¶¶ 7:1-15.
[24] *Id.* ¶¶ 16:3-17:20.

why they were disappointed with the terms he secured. Third, he actively acknowledged in his testimony the disappointment felt by both Carter and Williams and the eventual reluctance Williams expressed regarding the settlement terms.[25] Recognizing their hesitation demonstrates the nuance of the conversation he had with the Plaintiffs on February 2, 2023. Standing in contrast to these indicia of reliability are Williams' and Carter's actions on the morning of February 2, 2023. During a conversation over the phone with O'Hanlon, Williams hung up on him and only contacted him by email later that day to express her disapproval.[26] Nothing in the record indicates that Carter expressed any opposition to the settlement on February 2, 2023 beyond his initial disappointment.[27] This sequence of events is more suggestive of a change of heart than a lack of initial authorization. Under these circumstances, the Court concludes that O'Hanlon has presented the more convincing version of the disputed events. Therefore, the Court finds that O'Hanlon acted with actual authority when he settled this case on the morning of February 2, 2023.

      **C.    Ratification**

Even if there was a genuine dispute as to whether O'Hanlon acted with actual authority, the Plaintiffs ratified their attorney's acceptance of the settlement

---

[25] *Id.* ¶¶ 9:12-22, 16:6-17:9.
[26] *Id.* ¶¶ 11:4-19.
[27] *Id.* ¶¶ 6:1-7:3.

agreement "by failing to promptly repudiate it after having received clear recitation of its terms."[28] Both Williams and Carter knew that O'Hanlon had possibly exceeded his authority on February 2, 2023.[29] O'Hanlon's testimony and the provided emails also demonstrate that they were both aware on February 2, 2023 of the core term of the settlement offer: the ten-thousand dollars to be paid by the Defendants.[30] Despite this, Williams and Carter did nothing to communicate their disagreement to Defendants until they refused to sign the release form sent on March 23, 2023.[31] By failing to "disavow [the settlement agreement at] the first moment [they] receive[d] knowledge that [their] attorney ha[d] transcended his authority," they effectively made their "attorney's acts [their] own."[32] Therefore, Defendants' Motion to Enforce Settlement is granted. Plaintiff Williams' Motions to Extend Case Management, Compel Discovery, and Request a Trial Date are denied due to this conclusion.

### D.    Motion to Amend Complaint

In her Motion to Amend Complaint, Williams seeks to add President Judge Nancy Butts of the Pennsylvania Court of Common Pleas and the Lycoming County Office of the District Attorney as defendants. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and

---

[28] *Dugan*, 125 F. Supp. at 537.
[29] *See* Doc. 61 (Evidentiary Hearing Transcript) ¶¶ 5:22-7:3.
[30] *See* Doc. 53 (Brief in Opposition to Defendants Motion to Enforce Settlement); Doc. 61 (Evidentiary Hearing Transcript) ¶¶ 5:22-7:3.
[31] *See* Doc. 61 (Evidentiary Hearing Transcript) ¶¶ 14:13-15:4, 17:24-19:21.
[32] *Dugan*, 125 F. Supp. at 537.

Case 4:21-cv-00015-MWB   Document 62   Filed 12/04/23   Page 8 of 9

futility."[33] A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[34]

Granting this motion would not allow Williams to revive this suit. Judge Butts is protected by the doctrine of judicial immunity as it "bars civil suits against judicial officers who are acting in their judicial capacity."[35] The Lycoming County District Attorney's Office "does not investigate initial complaints that a citizen may have against an individual police officer or police department."[36] Instead, citizens are instructed to follow the police department's established complaint procedure and then to make a "request in writing to the chief or elected official who may have control of the department."[37] Therefore, adding Judge Butts and the Lycoming County District Attorney's Office as defendants would be futile.

### III. CONCLUSION

After reviewing the evidence, the Court concludes that O'Hanlon acted with express authorization to settle the Plaintiffs' case on their behalf. The Court further notes that even if there was a dispute as to O'Hanlon's authority, his actions were

---

[33] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

[34] *Id.*

[35] *Levys v. Manning*, Civ. A. No. 16-1820, 2016 U.S. Dist. LEXIS 175098, at *7 (W.D. Pa. Dec. 16, 2016) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), *report and recommendation adopted by Levys v. Manning*, 2:16-CV-1820, 2017 U.S. Dist. LEXIS 2263 (W.D. Pa. Jan. 6, 2017).

[36] *Frequently Asked Questions*, LYCOMING COUNTY DISTRICT ATTORNEY'S OFFICE, https://www.lyco.org/Elected-Officials/District-Attorney/Frequently-Asked-Questions (last visited Nov. 28, 2023).

[37] *Id.*

effectively ratified by the lengthy delay between his acceptance of the agreement and the Plaintiffs' refusal to sign the release forms.

    An appropriate Order follows.

                                                BY THE COURT:

                                                *s/ Matthew W. Brann*
                                                Matthew W. Brann
                                                Chief United States District Judge